**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1898-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HEATHER S. BARBERA, a/k/a
HEATHER BARBERA, HEATHER
GORDON BARBERA, and
HEATHER SUE THOMPSON,

    Defendant-Appellant.

_____

Submitted May 20, 2026 – Decided July 7, 2026

Before Judges Gummer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 19-10-1990.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Ruth E. Hunter, Designated Counsel, on the brief).

William E. Reynolds, Atlantic County Prosecutor, attorney for respondent (Kristen Nicole Pulkstenis, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Heather S. Barbera appeals from a January 23, 2025 order denying her petition for post-conviction relief (PCR) after an evidentiary hearing. Because the PCR court's factual findings were sufficiently supported by the record and it correctly applied the law, we affirm.

In October 2019, defendant was charged in a superseding indictment with various crimes arising from a July 7, 2018 incident that occurred between her, her mother, and grandmother. Under the indictment, she was charged with: first-degree murder of her mother, N.J.S.A. 2C:11-3(a)(1) (count one); first-degree murder of her grandmother, N.J.S.A. 2C:11-3(a)(1) (count two); first-degree murder of her mother during the commission of a crime, N.J.S.A. 2C:11-3(a)(3) (count three); first-degree murder of her grandmother during the commission of a crime, N.J.S.A. 2C:11-3(a)(3) (count four); first-degree robbery in the course of committing a first/second degree crime, N.J.S.A. 2C:15-1(a)(1) and N.J.S.A. 2C:15-1(a)(3) (count five); first-degree armed robbery using a deadly weapon (a nightstick and/or baton), N.J.S.A. 2C:15-1(a)(1) (count six); first-degree robbery with attempt to kill and/or inflict serious bodily injury on her mother and grandmother, N.J.S.A. 2C:15-1(a)(1) and N.J.S.A. 2C:15-1(a)(3) (count seven); third-degree possession of a weapon for unlawful

A-1898-24

purpose, N.J.S.A. 2C:39-4(d) (count eight); and third-degree theft of her mother's credit card(s) with fraudulent intent, N.J.S.A. 2C:21-6(h) (count nine).

On October 15, 2019, defendant entered into a plea agreement with the State. The agreement provided defendant would plead guilty to aggravated manslaughter of her mother under the first count and to murder of her grandmother under the second count. In exchange, the State agreed to dismiss the remaining counts of the indictment. Moreover, defendant would be sentenced to thirty years on the murder charge, without the possibility of parole, and twelve years, consecutive to the murder sentence, on the aggravated manslaughter charge, eighty-five percent to be served pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

During the plea hearing, defendant stated she understood the charges to which she was pleading guilty. Further, she was satisfied with her counsel and with the plea agreement. Defendant stated that she and counsel reviewed the indictment and the evidence in her case. She indicated that she truthfully answered the questions on the plea form and had no questions for the court or counsel.

Defendant admitted she was pleading guilty because she was guilty and was doing so voluntarily and without being forced or threatened. In response to

A-1898-24

questioning, defendant stated she and her mother got into a verbal argument that turned physical. Further, during the altercation her mother struck her in the head with a flashlight. Defendant indicated at some point during the altercation, her mother no longer had the flashlight and was "not armed with any weapon," and defendant was "not in fear of [he]r life." Nevertheless, she "sought . . . out" and "decided to use" her father's police baton and struck her "mother multiple times with" it on her "head and body." Defendant stated she recognized "striking [he]r mother repeatedly with the baton in the head and body[,]" "manifest[ed] extreme indifference to the value of her [mother's] life[,]" and "cause[d] her death."

Further, defendant indicated that her grandmother, who was "in her late eighties," tried "to intervene" by grabbing her arm, "to try to get [her] to stop assaulting [he]r mother." Defendant acknowledged her mother was "incapacitated at this point." Defendant stated, in response to her grandmother's attempt to stop her, she struck her grandmother with the baton "repeatedly in her head and body." Defendant admitted she caused her grandmother's death by "knowingly and purposely inflicting serious bodily injury."

The court advised defendant: "[Y]ou . . . understand that by admitting your guilt here in court today that you're waiving presentation of any evidence to a jury that could be seen in your defense such as issues as your counsel

4

mentioned of self-defense or diminished capacity based on any kind of substance issues." Defendant indicated she understood. The court accepted her plea.

On January 9, 2020, the matter returned to court for sentencing. Counsel advised the court he had "reviewed the adult presentence report." Further, counsel stated he had submitted a character letter from defendant's lifelong friend, who intended to speak on defendant's behalf.

Counsel explained, during the course of his representation of defendant, that he learned a lot about defendant's background, "where she c[a]me[] from, [and] the type of upbringing that she had." He stated defendant experienced "a very, very toxic and very unhealthy family dynamic." Counsel indicated he thought there "were substance abuse issues" and "mental health issues."

The court stated it considered the parties' submissions, arguments, and defendant's "expression of sorrow and remorse." Further, it noted "defendant report[ed] a history of some substance abuse in the past with treatment" and "a history of chronic mental health conditions." The court sentenced defendant in accordance with the plea agreement. We affirmed defendant's appeal of the sentence on an excessive sentencing calendar pursuant to Rule 2:9-11. State v. Barbera, No. A-2480-19 (App. Div. June 7, 2021) (order at ¶ 4).

A-1898-24

On January 2, 2024, defendant filed a petition for PCR. She alleged counsel "failed to advise [her] about the defenses of diminished capacity and self-defense." Defendant alleged she was provided with ineffective assistance of counsel because "[p]rior to her plea and sentencing, [she] told . . . counsel about [her] mental health and substance abuse issues." Further, "notwithstanding substantial evidence of mental health issues which likely impaired her capacity to commit the crimes for which she was charged, . . . counsel neither had [her] evaluated by a professional or advised her to do so." Defendant supported her petition for PCR with the report of Dr. Gerard A. Figurelli, Ph.D. Defendant argued:

> There is a reasonable probability that, had [she] been evaluated before she pleaded guilty and was sentenced, she likely would not have entered her plea: the matter may then have gone to trial resulting in [her] acquittal, or she may have been offered a plea to substantially less serious charges than she ple[ade]d guilty to or m[ore] favorable terms than the functioning equivalent of a life sentence that she received. [Defendant] thus was prejudiced by counsel's deficient performance.

In addition, defendant alleged counsel "failed to adequately flesh out a self-defense argument." Defendant contended her testimony during the plea hearing "unequivocally indicate[d] that [her] mother was the initial aggressor." Defendant sought the vacatur of her guilty plea and the judgment of conviction.

6

On March 14, 2024, the PCR court heard the parties' arguments regarding the need for an evidentiary hearing. The court determined an evidentiary hearing was necessary because it needed "a complete indication as to counsel's review of the issues raised pertaining to mental health, diminished capacity, and the like."

On October 24, 2024, the PCR court held an evidentiary hearing. The State presented the testimony of counsel and defendant testified on her own behalf. Dr. Figurelli was not summoned to testify, however, his report was accepted by the court to "give it the weight [it] deem[ed] appropriate."

Counsel testified he had been a practicing lawyer for twenty-three years and his experience included "[q]uite a bit" of trials and "upwards of a thousand or so" pleas. He explained he "did not" "observe any indications that . . . defendant needed or warranted a mental health evaluation" nor that "defendant could not have formed the requisite mental state for aggravated manslaughter or first[-]degree purposeful murder."

Counsel testified that using his "expertise and based on [his] assessment of the case," defendant did not "have a viable diminished capacity defense." Counsel noted defendant's statement to the police officers—"'I'm not going to spend the rest of my life in jail for this. I'm going to tell them I got mental

A-1898-24

problems, and they'll just send me to a hospital for a while'"—did not "attach[] to a mental health defense."

Moreover, counsel noted defendant's conduct after the murders—that she "robbed [the] house"; "took a ring off of her dying or dead mother's finger"; and "had an exchange with somebody over calling a cab, and they asked her where she was going or what she was doing, and her response was that she needed to go get laid"—led him away from a diminished capacity evaluation. Counsel added that defendant's statements and actions would not have helped her defense in front of a jury if the matter were tried.

Counsel stated he recalled defendant underwent a psychological evaluation in November 2017, although he did not remember the specifics. Counsel also recalled her pharmacy records in the discovery. Further, he recalled "closely" reviewing the presentence report but did not remember the specifics. Moreover, counsel acknowledged a character letter from defendant's lifetime friend in the report and noted he shared it during the sentencing hearing in an attempt to mitigate the sentence.

Counsel explained defendant knew her exposure to "spending the rest of her life in prison" was "tremendous." Counsel stated that there were "several ways" defendant could have received such a sentence including, "consecutive

sentencing" or even "one murder" conviction, and she had "two separate victims." Counsel described defendant as "very assertive with" him regarding "any possibility to negotiate a plea, in lieu of a trial, that would give her light at the end of the tunnel, that would potentially see, one day, that she would be free and would[ no]t be incarcerated for the rest of her natural life." He explained "[t]he proofs in this case were overwhelming, [and it] would not have been difficult to convict" defendant. Counsel stated defendant's desire to "plea," was her "light at the end of the tunnel," and "guided all of [his] strategic thinking."

Counsel explained the plea "gave [defendant] a number" he "never thought [they] would see . . . on two murders" and "by any viable measuring stick, [defendant] was never going to do better." Counsel stated the plea agreement was "amongst the best that [he had] ever negotiated with those facts and that exposure" and it was "extremely favorable to" defendant. The parties submitted closing arguments in writing.

On January 23, 2025, the PCR court issued a written decision accompanying its order. The court detailed counsel's and defendant's testimony. The court found counsel's testimony credible. The court cited the relevant rules of court and case law governing petitions for PCR concerning ineffective assistance of counsel.

Regarding defendant's arguments concerning counsel's failure to investigate or advise her regarding a diminished capacity defense, the PCR court found "[t]here is nothing in the record and nothing submitted to the court that demonstrates . . . counsel failed to represent [defendant] per the standards expected of a criminal defense attorney."

Instead, the PCR court found counsel "understood the strength of the State's case, the probable outcome of trial, the overall sentencing exposure, and [defendant]'s wishes when he engaged in a strategic course of action to obtain the most favorable plea bargain possible." Further, the court found "[t]here is no requirement that in order to be effective, counsel must prepare each case for trial if in counsel's judgment the best strategy is to procure a negotiated outcome." Moreover, the court found "counsel's strategy to forgo a trial and any possible defense for diminished capacity or the exhausting [of] all avenues to seek evidence of mental disease or defect when such was not apparent cannot be faulted in hindsight."

Nevertheless, the PCR court considered whether "plea counsel was on notice of [defendant]'s mental health issues." In this respect, the court reviewed the plea transcript and defendant's confirmation that she understood by pleading

guilty she was waiving the right to present a self-defense or diminished capacity defense to a jury.

Further, the court reviewed the sentencing transcript and counsel's statements to the sentencing court regarding defendant's "'substance abuse issues'"; "rough background that involved a very toxic and very unhealthy family dynamic"; and "'mental health issues.'" In addition, the court noted counsel "brought forth . . . a lifetime friend of" defendant, who "submitted a [character] letter to the court and spoke before sentencing" about defendant's "substance abuse and mental illness that went untreated" and that defendant "needed and deserved mental help."

The PCR court concluded that "[t]hese various statements and submissions by . . . counsel show . . . counsel was aware of [defendant]'s mental health issues" and "intended to move forward with both a self-defense argument and diminished capacity argument." Indeed, the court found counsel "investigated into [defendant]'s mental health and history before the time of the plea"; "extensively evaluated the possibility of a mental health defense"; and "was working and building both a self-defense claim and a diminished capacity defense, however neither were needed due to the matter resolving by way of a plea."

Thus, the PCR court found defendant had "failed to satisfy the first prong of the Strickland[1] test" because counsel "was not deficient in his representation" as "he took steps towards building a defense for [defendant]'s trial[;] however such argument was not needed due to" defendant's plea.

The PCR court considered defendant's argument, if counsel "would have had [her] evaluated and made a case for diminished capacity the outcome would have been different." However, the court noted the plea agreement provided for "a sentence of forty-two years for murder and aggravated manslaughter" and defendant "was facing [the] maximum penalty of life imprisonment." The court found counsel's "remarks, statements, and representations all point to his awareness of [defendant]'s life of substance and behavior issues." Moreover, the court observed that "[h]ad the matter proceeded to trial, one might speculate that [counsel] may have tested the State's overwhelming proofs with a suggestion of self-defense or diminished capacity"; however, defendant's "overarching instructions to her counsel to seek an outcome that offered her a chance of some life outside of prison determined [counsel]'s strategic thinking." Further, "[a]lthough there is no contemporaneous mental health or substance

---

1 Strickland v. Washington, 466 U.S. 668 (1984). In State v. Fritz, 105 N.J. 42 (1987), the New Jersey Supreme Court adopted the Strickland standards.

evaluation in the court records" counsel "was on notice of [defendant]'s [mental] health and substance issues" and his "strategic choices [we]re adequately and convincingly reflected in his conduct."

Regarding Dr. Figurelli's opinion, the PCR court found counsel "had a variation of the same conclusions or something similar that he intended to use as a defense if the matter were to go to trial." Further, defendant "understood that she was waiving possible defenses to take the plea" and "knowing that[] there [wa]s no reasonable probability that the outcome would have been different."

The court determined defendant had "failed to show that she was deprived of the effective assistance of counsel" and denied the petition for PCR.

Defendant presents the following arguments on appeal:

> POINT I.
>
> THE PCR COURT'S FACTUAL FINDINGS WERE NOT BASED ON SUFFICIENT CREDIBLE EVIDENCE IN THE RECORD AND ITS LEGAL CONCLUSIONS WERE WRONG.
>
>> A. The PCR Court's Findings Were Not Based On Sufficient Credible Evidence In The Record Because The Court Improperly Characterized Counsel's Decision As "Strategic" Where He Conducted No Investigation Into Defendant's Significant Mental Health, Substance Abuse, and

13

Trauma Issues That Counsel Was Aware Of And Where The Expert Findings Demonstrated Prejudice.

B. The PCR Court's Findings Were Also Not Based On Sufficient Credible Evidence In The Record Because The Court Accepted Trial Counsel's Unsupported Reasons That He Wanted To Avoid a Life Sentence But Advised Defendant to Accept 40 Years of Parole Ineligibility And That He Did Not Want the State to Punish Defendant For Counsel's Investigation Into Defendant's Mental Health.

C. The Court Erred In Its Legal Conclusions That Counsel Was Subject To A Different Standard And Did Not Need to Investigate Beyond His Own Assessment of Available Defenses Because He Was Trying To Secure A Plea Deal Rather Than Prepare The Case For Trial.

Our review of a PCR claim after a court has held an evidentiary hearing "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013). We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004). The de novo standard of review also applies to mixed questions of fact and law. Id. at 420.

PCR "is New Jersey's analogue to the federal writ of habeas corpus." State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Preciose, 129 N.J. 451, 459 (1992)). It "provide[s] a built-in 'safeguard that ensures that a defendant [i]s not unjustly convicted.'" Nash, 212 N.J. at 540 (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)).

Under Rule 3:22-2(a), "[a] petition for [PCR] is cognizable if based upon . . . [a s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey[.]"

"Those accused in criminal proceedings are guaranteed the right to counsel to assist in their defense." State v. Gideon, 244 N.J. 538, 549 (2021) (citing U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10).[2] "[I]t is not enough

---

[2] The Sixth Amendment to the Constitution of the United States provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

'[t]hat a person who happens to be a lawyer is present at trial alongside the accused,' rather, the right to counsel has been interpreted by the United States Supreme Court and [the New Jersey Supreme] Court as 'the right to the effective assistance of counsel.'" Id. at 550 (second alteration in original) (citation omitted) (quoting Strickland, 466 U.S. at 685-86).

To establish a claim for ineffective assistance of counsel, a defendant must satisfy the two-prong test established in Strickland. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

---

Article I, Paragraph 10 of the Constitution of the State of New Jersey provides: "In all criminal prosecutions the accused shall have the right . . . to have the assistance of counsel in his defense."

A-1898-24

Under "the 'second, and far more difficult, prong,'" a defendant must show that his or her defense was prejudiced by counsel's purported ineffective assistance. Gideon, 244 N.J. at 550 (quoting Preciose, 129 N.J. at 463). The defendant must demonstrate "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. "Prejudice is not to be presumed." Gideon, 244 N.J. at 551 (quoting Fritz, 105 N.J. at 52). "The defendant must 'affirmatively prove prejudice.'" Ibid. (quoting Strickland, 466 U.S. at 693).

If a defendant fails to "make[] both [Strickland] showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687.

The right to the effective assistance of counsel extends to counsel's adequate investigation. See State v. Porter, 216 N.J. N.J. 343, 353 (2013) (defense "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary") (quoting State v. Chew, 179 N.J. 186, 217 (2004)) (internal quotation marks omitted). "'In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Andrus v. Texas, 590 U.S. 806,

17

814 (2020) (quoting Wiggins v. Smith, 539 U.S. 510, 521-22 (2003) (quoting Strickland, 466 U.S. at 691)). When a defendant "claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (citing R. 1:6-6).

In addition, the right to effective assistance of counsel extends to legal assistance related to the entry of a guilty plea. See State v. Gaitan, 209 N.J. 339, 350-51 (2012) ("It is well established that the Strickland standard applies with equal force to assertions of ineffective assistance of counsel associated with the entry of guilty pleas . . . ."). A counsel's performance is not deficient if "a defendant considering whether or not to plead guilty to an offense receives correct information concerning all of the relevant material consequences that flow from such a plea." State v. Agathis, 424 N.J. 16, 22 (App. Div. 2012) (citing State v. Nuñez-Valdéz, 200 N.J. 129, 138 (2009)). To demonstrate "prejudice after having entered a guilty plea, a defendant must prove 'that there is a reasonable probability that, but for counsel's errors, [he or she] would not have pled guilty and would have insisted on going to trial.'" Gaitan, 209 N.J. at

351 (alteration in original) (quoting Nuñez-Valdéz, 200 N.J. at 139) (internal quotation marks omitted).

A defendant "must establish the right to [PCR] by a preponderance of the credible evidence." Preciose, 129 N.J. at 459 (citing State v. Mitchell, 126 N.J. 565, 579 (1992)).

On appeal, defendant argues "counsel was ineffective for his failure to conduct any expert investigation into [her] obvious mental health and other issues." Further, she contends counsel's advice "to accept a 42-year deal for murder and aggravated manslaughter was unreasonable." Finally, defendant asserts "[t]hese failures prejudiced [her] because" Dr. Figurelli's report provides "powerful evidence that should have been used to negotiate a lesser plea deal and/or argue for a lower sentence." We disagree.

First, counsel's representation is presumptively reasonable. See Strickland, 466 U.S. at 689. Moreover, counsel considered defendant's background, juxtaposed against her actions and statements during and after the heinous crime, and reasonably concluded, based on years of experience, that an expert evaluation would not assist her defense. Under these circumstances, we conclude counsel provided reasonable professional assistance.

A-1898-24

Further, taking into account defendant's desire to avoid a lifetime in prison and her actions during and after the crime, it was not unreasonable for counsel to recommend accepting the plea agreement. We add defendant knowingly and voluntarily accepted the plea agreement, even after being advised the considered defenses of diminished capacity or self-defense would be waived.

Lastly, because we conclude counsel's representation was not ineffective, we similarly conclude defendant did not establish she was prejudiced. Indeed, considering the totality of the evidence before and after the crime, there is no evidence the State would have agreed to a plea including lesser offenses or a shorter period time of incarceration had there been a mental health evaluation. Nor, considering the evidence against her, are we convinced defendant would have reasonably rejected the plea and proceeded to trial.

To the extent we have not specifically addressed any of defendant's remaining legal arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-1898-24